UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CHRISTINA FLEURISSAINT**,　　　　　　　　　　　Case No. _____

　　　Plaintiff

　　　　　　　　　　　　　　　　　　　　　　　　　**JURY TRIAL DEMANDED**

vs.

**MERCANTILE ADJUSTMENT BUREAU, LLC**

　　　Defendant.
_____/

## COMPLAINT FOR DAMAGES

　　　Comes now Plaintiff, Christina Fleurissaint, by and through undersigned counsel, Nirav Desai, and states the following:

## INTRODUCTION AND JURISDICTION

1.　This is an action for statutory damages brought by an individual consumer for violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 *et. seq.* ("FDCPA").

2.　Court has jurisdiction of the FDCPA claim under 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

3.　Venue is appropriate in this Court because Defendants directed its' illicit conduct at Plaintiff in Broward County, Florida.

4.　Plaintiff demands a trial by jury on all issues so triable.

## PARTIES

5.　Plaintiff is a natural person currently residing in Broward County, Florida. Plaintiff is a consumer within the meaning of the FDCPA. The alleged debt owed arises out of consumer, family and household transactions.

6.　Defendant, MERCANTILE ADJUSTMENT BUREAU, LLC is a foreign corporation with its principal place of business in Williamsville, NY.

7. Defendant is engaged in the collection of debts from consumers using the mail and telephone in Florida. Defendant is a "debt collector" as defined by the FDCPA. 15 U.S.C. §1692a(6).

8. Defendant's collection activity of which Plaintiff complains occurred within the previous twelve (12) months for the FDCPA claim.

## FACTS

9. The alleged debt from Defendant stems from Regional Acceptance Corp for $18,248.

10. Defendant mailed Plaintiff a dunning letter on April 8, 2020 attempting to collect on the alleged debt.

11. The dunning letter stated "Please be advised that we can offer you the opportunity to resolve this account for less than the balance owed. We can resolve this account for $8211, which must be received in accordance with the following payment schedule: $7,000 due by 4-30-20, $1,211 due by 5-30-20. Failure to comply with these proposed conditions will make this offer null and void."

12. In response to the dunning letter the parties spoke on the phone on or around April 9, 2020. Defendant's agent told her that she could break the settlement offer of $8,211 into three payments where Plaintiff would pay $7,000 in April, around $600 in May and around $600 in June.

13. Plaintiff was later transferred to a manager during the call and the manager advised Plaintiff that in order to take advantage of the settlement offer she would need to make a one-time payment of $8,211.

14. The manager later said that she could make two payments but the payment would have to be within 30 days. As once a settlement offer is made the consumer has 30 days to make a payment to take advantage of the offer.

15. The manager finished the call by saying that the offer that I am giving you is the best offer I can give you and there is no wiggle room. I am not going to tell you something that I can or can not do as I would be breaking the law if I lied to you.

16. The parties spoke about two days later for a second time. During the call Defendant's agent

informed Plaintiff that because she made a complaint with the Florida Attorney General that she could not make a payment on the account and Defendant could not discuss any settlement options with her.

17. However, moments later on the call the agent said that their best offer was $8,211 and it was good only until the end of April.

18. The parties spoke again a day or two days later for a third time. During the call Plaintiff asked Defendant's agent if she could take advantage of the settlement offer in June? The agent replied that she could take advantage of the settlement offer as long as Defendant had the file.

19. Plaintiff then asked if she could make one of the payments in July? The agent responded that if Defendant has the account the agent will work with Plaintiff as long as we have the file.

20. The agent also advised Plaintiff that the hold from the Attorney General complaint was removed and she could now pay on account.

21. Accordingly, Plaintiff paid (or attempted to pay) the $6,700 during the call and Defendant advised Plaintiff that she could pay the remaining balance of roughly $1,500 in May to take advantage of the settlement offer.

22. Defendant subsequently mailed Plaintiff a letter on or around April 10 that indicated they have received payment of the $6,700 and her balance was $11,548. This was a mischaracterization because as per the terms of the settlement offer she should only have a balance for $1,511 in violation 15 U.S.C. §1692e(2)(a)

23. During all of Defendant's calls with the Plaintiff and dunning letters to Plaintiff they never advised Plaintiff that if she settles the account for less then what is owed there could be negative tax consequences or to consult with a tax professional.

24. The discharge of a debt constitutes gross income under the Internal Revenue Code. 26 U.S.C. § 61(a)(12). If the discharge is of $600 or more, the discharging entity must file a 1099-C with the IRS. 26 U.S.C. § 6050P; 26 C.F.R. § 1.6050P-1. Regardless of whether the creditor is required to report the discharge by way of a 1099-C, the debtor may be required to report the discharge as income.

25.    Defendant's failure to disclose the negative tax consequences of settling an account for less then what is allegedly owed was a misrepresentation and unconscionable means to collect on an alleged debt in violation of 15 U.S.C. §1692e-f.

26.    Defendant's statement from paragraph 16 was a misrepresentation because Defendant immediately after advising he could not discuss settlement with Plaintiff began to discuss settlement in violation of 15 U.S.C. §1692e.

27.    Defendant collecting payment on the account, from paragraph 21, prior to researching and validating Plaintiff's dispute with the Attorney General was an unconscionable means to collect on an alleged debt in violation of 15 U.S.C. §1692f.

28.    Defendant's multiple time-sensitive settlement offers were not actually time-sensitive.

29.    The April 8 dunning letter to Plaintiff indicated that $7,000 due by 4-30-20 and $1,211 due by 5-30-20.  Failure to comply with these proposed conditions will make this offer null and void.

30.    During the parties first call Defendant advised Plaintiff originally that she could break the settlement offer up into three different payments and pay the last payment in June, see paragraph 12.

31.    During the first call Plaintiff also spoke to a manager who then advised Plaintiff she could only make a one-time payment on the account for $8,211 to settle the matter, see paragraph 13.

32.    The manager then contradicted the previous statement and said Plaintiff could make two payments but they would have to be within 30 days once the settlement offer was made, as settlement offers are only good for 30 days, see paragraphs 14-15.

33.    The second time the parties spoke the agent told Plaintiff that the only settlement offer on the account was a one-time payment for $8,211 and it was good only until end of April, see paragraph 17.

34.    The third time the parties spoke the agent said she could take advantage of the settlement offer in June or July or as long as Defendant had the file, see paragraphs 18-19.

35.    After Defendant made these settlement offers to Plaintiff on the phone, they never disclosed to Plaintiff that they are not obligated to renew their offers.

36. Defendant's multiple time-sensitive settlement offers were not actually time-sensitive, including but not limited to: the dunning letter offering a very specific payment plan, Defendant telling Plaintiff she has to pay a one-time payment by the end of April, Defendant telling Plaintiff she can break the payments up into three payments and then two payments, Defendant telling Plaintiff settlement offers are only good for 30 days when they are offered, Defendant advising Plaintiff she could pay in June or July and then telling Plaintiff that she could take advantage of the settlement offer as long as Defendant had the file.

37. Defendant's false time-sensitive settlement offers were misrepresentations intended to deceive Plaintiff into paying on the account in violation of 15 U.S.C. §1692e.

38. Defendant's actions have caused Plaintiff to incur actual damages, attorney's fees, as well as emotional distress.

## COUNT I: VIOLATION OF THE FDCPA

39. Plaintiff re-alleges and incorporates by reference the above paragraphs.

40. Defendant regularly attempts to collect consumer debts asserted to be due to another and at all relevant times herein, was a "debt collector" as defined by 15 U.S.C. §1692a(6).

41. A single action on the part of the debt collector can violate multiple sections of the FDCPA.

42. In its attempts to collect the alleged debt from Plaintiff, Defendant has committed violations of the FDCPA, 15 U.S.C §1692 *et. seq.* including, but not limited to the following:

    a. Defendant made statements that were misrepresentations intended to deceive Plaintiff into paying on the alleged debt in violation of 15 U.S.C. §1692e;

    b. Defendant utilized unconscionable means in their attempt to collect on the alleged debt in violation of 15 U.S.C. §1692f.

    c. Defendant mischaracterized the amount, character or legal status of the debt in violation of 1692e(2)(a).

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant for:

A. Declaratory judgment that Defendant's conduct violated the FDCPA;

B. Actual damages;

C. Release of the alleged debt;

D. Statutory damages, costs, litigation expenses and attorney's fees pursuant to 15 USC 1692(k); and

E. For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, **CHRISTINA FLEURISSAINT**, hereby demands a trial by jury of all issues so triable.

DATED: June 3, 2020.

          Respectfully Submitted,

          By:/s/ Nirav A. Desai            .
          William J. Roe, Esq.
          Florida Bar No.: 85337
          Nirav A. Desai, Esq.
          Florida Bar No.: 93202
          LAW OFFICE OF WILLIAM J. ROE, P.A.
          17971 Biscayne Blvd. Ste. 210
          Aventura, FL 33160
          Office: (786) 332-6323
          Fax: (786) 233-9562
          Primary Eservice: wjroe@wjroelaw.com
          Secondary Eservice: ndesai@wjroelaw.com
          Tertiary Eservice: cgerdts@wjroelaw.com